FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ APR 0 7 2017 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA,

v.

DAVON BROWN,

                 Defendant.
-----------------------------------------------------------X

**MEMORANDUM & ORDER**
15-CR-0287-8 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

On July 15, 2015, the United States filed a seventy-five count Superseding Indictment against twenty-three defendants, including Davon Brown ("Defendant"). On April 5, 2016, Defendant pleaded guilty to Count One, Racketeering Acts Sixty through Sixty-Three, of the Superseding Indictment. The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and the President and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is hereby sentenced to 41 months of incarceration, 3 years of supervised release, and payment of restitution, a forfeiture money judgment of $1,000,000.00, and a $100.00 special assessment.

## BACKGROUND

On July 15, 2015, the United States filed a seventy-five count Superseding Indictment against twenty-three defendants, including Davon Brown ("Defendant"). *See* Superseding Indictment, ECF No. 48. On April 5, 2016, Defendant pleaded guilty to Count One, Racketeering Acts Sixty through Sixty-Three, of the Superseding Indictment. *See* Plea Agreement ¶ 1, ECF No. 309.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

### I. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . .

. the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form[.]" *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

## II. Analysis

### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Born in Richmond, Virginia on August 7, 1994, Defendant entered the foster care system as an infant. Presentence Investigation Report ("PSR") ¶¶ 47, 52, ECF No. 362. When Defendant was eleven months old, an older couple obtained custody of him and his sister, and they legally adopted both children several years later. *Id.* ¶ 52. Defendant refers to this couple—his adoptive parents—as his grandparents. *Id.* ¶¶ 47, 50-52. Similarly, although he is aware that she is not his biological mother, Defendant has always referred to the couple's adult daughter—who entered Defendant's life when he was five or six years old—as his mother. *Id.* ¶¶ 47, 48, 50-52. He "does not talk about [his biological parents]." *Id.* ¶ 52. For ease of reference, the Court will refer to Defendant's family members as he does.

2

After their adoption, Defendant and his sister were raised by their grandparents under "middle-income" circumstances in Brooklyn, New York. *Id.* ¶ 51. In 2011, when he was sixteen years old, Defendant worked part-time as a waiter at a restaurant, but he has otherwise primarily been financially supported by his family. *Id.* ¶ 62. Defendant's education has been limited. He attended high school until at least September of 2012, but he did not graduate as he was incarcerated during his senior year. *Id.* ¶ 60. Despite his criminal history, Defendant has always maintained good relationships with his mother and grandparents, and he stated he plans to return to live with them once he is released from custody. *Id.* ¶¶ 50-51. Defendant noted his present incarceration has been particularly difficult for his family, as they have never been separated from one another for such a lengthy period, and he has expressed concern about the health of his grandparents, who are currently seventy-eight and ninety years old, respectively. *Id.* ¶ 50-51. Defendant also reports a stable relationship with his girlfriend of two years, who is in good health, is employed, and has stayed in regular contact with Defendant since his arrest. *Id.* ¶ 54. He has never been married and does not have any children. *Id.*

Beginning in 2012, at the age of seventeen, Defendant had a series of encounters with the criminal justice system, resulting in several convictions and periods of incarceration. *See id.* ¶¶ 34-39. Defendant's first arrest occurred in February 2012 after a police officer observed him toss a 0.25 caliber semi-automatic pistol containing an unspecified quantity of ammunition on the ground. *Id.* ¶ 35. Defendant pleaded guilty to criminal possession of a weapon in the second degree and was adjudicated as a youthful offender. *Id.* Several months later, in May 2012, Defendant was arrested again after he and several others repeatedly punched, knocked to the ground, and kicked the victim in the face and body before taking his wallet. *Id.* ¶ 36. Defendant pleaded guilty to robbery in the second degree. *Id.*

3

In March 2014, when he was twenty years old, Defendant and his cousins became involved in a verbal dispute with a group of men inside a lounge; when one of the men attempted to take his designer belt, Defendant took out a blade and chased him. *Id.* ¶¶ 35, 37. After witnessing this encounter, police arrested and searched Defendant and discovered a box cutter and a New York State identification card that was not in Defendant's name and appeared to be forged. *Id.* ¶ 37. Defendant pleaded guilty to possession of a forged instrument in the third degree. *Id.* In July 2014, Defendant was arrested after a police officer observed him smoking a lit marijuana cigarette and pleaded guilty to possession of marijuana in the fifth degree. *Id.* ¶ 38. In November 2014, Defendant was arrested and charged with burglary and grand larceny in the fourth degree for receiving property by giving false credit card information, entering a location using stolen alarm codes, and removing currency and cellular phones. *Id.* ¶ 44. In February 2015, Defendant and others were arrested in New Jersey during the course of an investigation into fraudulent checks and credit card fraud. *Id.* ¶ 39. Defendant was found guilty of bad checks in June 2015, *id.*, shortly before his arrest for the instant offense in July 2015, *id.* ¶ 16.

By at least 2014, Defendant had become a member of the gangs Eight Trey and Bosses in Business and an associate of the Outlaw Gangsta Crips ("OGC"). *Id.* ¶¶ 1, 8, 14, 16. The OGC was a gang comprised primarily of individuals residing in and around the East Flatbush neighborhood of Brooklyn, New York and was a subgroup of the Crips gang. *Id.* ¶ 8. Members and associates of OGC have engaged in drug trafficking, fraud, firearms trafficking, promoting prostitution, and acts of violence, including murder, attempted murder, robbery, and assault. *Id.* The purposes of OGC included enriching the gang; promoting and enhancing the gang's prestige, reputation, and position among rival gangs; preserving and protecting the gang's power,

4

territory, and criminal ventures; maintaining fear of the gang in their victims and rivals; and concealing the gang's criminal activity from law enforcement. *Id.* ¶ 9.

Throughout 2014 and the first half of 2015, Defendant and other associates and/or members of the OGC used fraudulent checks to commit bank fraud. *Id.* ¶¶ 1-5, 11. After obtaining legitimate checks from co-conspirators, Defendant and others would create fraudulent checks bearing the same account and routing numbers. *Id.* ¶ 12. The fraudulent checks, which appeared to be issued by legitimate businesses, would be deposited into the bank accounts of unindicted co-conspirators via ATMs, *id.*, whereupon the banks would make a portion of the deposited money immediately available for withdrawal, *id.* ¶ 13. Using their co-conspirator account-holders, Defendant and others would then withdraw the available money, usually hundreds of dollars at a time, which represented fraudulently obtained funds. *Id.* Once the banks or purported check writers identified the deposits as fraudulent, the banks would assume the loss on behalf of the defrauded check writers. *Id.*

As part of the scheme, Defendant and others defrauded several banks throughout New York City and elsewhere, including Bank of America (Racketeering Act 60), JPMorgan Chase (Racketeering Act 61), Citibank (Racketeering Act 62), and TD Bank (Racketeering Act 63). *Id.* ¶¶ 2-5, 14. The total loss to the victim banks exceeded $550,000.00. *Id.* ¶ 14.

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant

with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

Defendant's crime both defrauded banks and helped to fund unlawful gang activity. The Court's sentence recognizes the seriousness of this offense and punishes Defendant accordingly. It seeks to deter Defendant from further criminal activity and encourage him to sever his ties to Eight Trey, Bosses in Business, the OGC, and other gangs. In a more general way, the Court's sentence sends a message to other gang members that a life of crime carries a risk of punishment that outweighs any potential gains. Finally, it also considers Defendant's young age, strong family ties, and limited education.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pleaded guilty to one count of Racketeering Conspiracy, in violation of 18 U.S.C. § 1962(d), for which he faces a maximum term of imprisonment of twenty years. *See* 18 U.S.C. § 1963(a). Defendant also faces a maximum term of supervised release of three years, *id.* § 3583(b)(2); probation of not less than one nor more than five years, *id.* § 3561(c)(1); a maximum fine of $250,000.00, *id.* § 3571(b)(3); restitution in an amount to be determined, *id.* § 3663A; and a special assessment of $100.00, *id.* § 3013.

### D. The Kinds of Sentence and the Sentencing Range Established For Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" 18 U.S.C. § 3553(a)(4)(A).

Guidelines § 2E1.1 applies to violations of 18 U.S.C. § 1962(d) and directs the Court to apply Guidelines § 2B1.1 for the underlying 18 U.S.C. § 1344 offense. *See* United States Sentencing Commission, *Guidelines Manual*, § 2E1.1 (Nov. 2015) ("USSG"). Guidelines § 2B1.1 sets a base offense level of six. *See* USSG § 2B1.1(a)(1). Because Defendant is accountable for a loss exceeding of $550,000.00, fourteen levels are added. *Id.* § 2B1.1(b)(1)(H). Defendant's acceptance of responsibility by pleading guilty, however, permits a three-level reduction. *Id.* § 3E1.1(a),(b). Accordingly, Defendant's total offense level is seventeen.

Defendant's prior convictions result in a subtotal criminal history score of six or nine.[1] Because Defendant committed the instant offense while on parole, however, two points are added. USSG § 4A1.1(d). Accordingly, Defendant's total criminal history score is eight or eleven, corresponding to a criminal history category of four or five. *Id.* ch. 5, pt. A.

With a total offense level of seventeen and a criminal history category of four or five, the Guidelines suggest a term of imprisonment of between thirty-seven and forty-six, or forty-six and fifty-seven, months. *Id.* Defendant also faces a term of supervised release of one to three years, *id.* § 5D1.2(a)(2); a fine of between $5,000.00 and $50,000.00, *id.* § 5E1.2(c)(3), (h)(1); and payment of the costs of prosecution, *id.* § 5E1.5. The Guidelines further suggest Defendant is ineligible for probation. *Id.* § 5B1.1 cmt. n.2.

The U.S. Probation Department recommends a sentence of forty-six months of imprisonment followed by three years of supervised release with special conditions, noting that

---

[1] In its sentencing memorandum, the Government suggests Defendant's subtotal criminal history score should be six, Gov't Sentencing Mem. at 2-3, ECF No. 388, whereas Probation indicates it should be nine, PSR ¶ 40. These differing calculations also result in a total criminal history score of eight or eleven and a criminal history category of four or five. *Compare* Gov't Sentencing Mem. at 3, *with* PSR ¶ 42.

"a sentence at the low end of the advisory guideline range is viewed as sufficient" in this case. *See* Sentence Recommendation at 1-2, ECF No. 362-1. The Government, by contrast, requests a sentence of between thirty-seven and forty-six months of imprisonment. Gov't Sentencing Mem. at 1. Similarly, defense counsel seeks a sentence of between thirty and thirty-seven months of imprisonment, as contemplated by the plea agreement, to permit Defendant to fulfill his "dreams of entering college and re-routing his life to a productive and law abiding future." Def.'s Sentencing Mem. at 6, ECF No. 380. Defense counsel also asserts that Defendant's criminal history points "overstate the seriousness of his [prior] offenses and under represent[] the effect of immaturity in the rapid accumulation of a criminal record at a very young age." *Id.* at 4.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

The policy statement accompanying USSG § 4A1.3 is pertinent here. Specifically, it recognizes that "the criminal history score is unlikely to take into account all the variations in the seriousness of criminal history that may occur" and "authorizes the consideration of a departure from the guidelines in the limited circumstances where reliable information indicates that the criminal history category does not adequately reflect . . . the defendant's criminal history or likelihood of recidivism." USSG § 4A1.3 cmt. background. Accordingly, the Court's sentence takes this policy statement into consideration.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

8

Defendant is the second to be sentenced of twenty-three defendants in this case, and the Court will craft a unique sentence for each defendant. Upon review of the sentences imposed by other federal district courts in the Second Circuit for similar crimes, the Court finds the sentence imposed here to be sufficient, but not greater than necessary, to comply with the purposes of sentencing. *See United States v. Kottage*, 510 F. App'x 23 (2d Cir. 2013) (upholding sentence of 41 months of imprisonment for conspiracy to commit wire fraud and bank fraud). For the reasons stated in this memorandum, and considering the other six § 3553(a) factors, the Court's sentence sufficiently avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Lastly, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). Restitution is required under the Mandatory Victim Restitution Act of 1996. *Id.* § 3663A. To date, only one of the four victim banks has submitted an Affidavit of Loss. *See* Addendum to PSR at 1, ECF No. 389. The Court will consider that and any additional Affidavits upon their submission.

## CONCLUSION

A sentence of 41 months of incarceration, to be followed by 3 years of supervised release, as well as payment of restitution in an amount to be determined, a forfeiture money judgment of $1,000,000.00, and a $100.00 special assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report and addendum to it and imposes the special conditions of release proposed by the Probation Department.

**SO ORDERED.**

s/ WFK
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: March 16, 2017
       Brooklyn, New York